UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
DIANE HEUSER,

                   Plaintiff,

             - against -

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-3601 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Diane Heuser brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have cross-moved for judgment on the pleadings. (Dkts. 11, 16.) For the reasons below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

### I.    Procedural History

On December 30, 2015, Plaintiff applied for DIB and SSI, alleging a disability beginning January 1, 2012. (Administrative Transcript ("Tr."[1]) 19.) Plaintiff's claims for DIB and SSI were initially denied on January 31, 2017. (Tr. 145.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 161.) On June 10, 2019, Plaintiff appeared with her attorney for a video hearing before ALJ Brien Horan. (Tr. 87–120.) During the hearing, a

---

[1] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

vocational expert testified.  (Tr. 88.)  By decision dated August 5, 2019, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") from January 1, 2012, her alleged onset date, through the date of the ALJ's decision.  (Tr. 16–33.)  On June 10, 2020, the Appeals Council of the SSA's Office of Appellate Operations denied Plaintiff's request for a review of the ALJ's decision.  (Tr. 1–6.)  Thereafter, Plaintiff timely commenced this action.[2]

## II.    The ALJ's Decision

### A.    The Five-Step Inquiry

In evaluating disability claims, the ALJ must conduct a five-step inquiry.  The plaintiff bears the burden of proof at the first four steps, and the Commissioner bears the burden at the final step.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).[3]  First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the plaintiff is not disabled.  *Id.*  If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment.  *Id.* § 404.1520(a)(4)(ii).  A severe impairment "significantly limits [the plaintiff's] physical or mental

---

[2] According to 42 U.S.C. § 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [she] was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to [her] of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to the contrary."  *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  The final decision was issued June 10, 2020 (Tr. 1), and the Complaint was filed on August 10, 2020 (Complaint, Dkt. 1), 56 days after the presumed receipt date of the decision, rendering this appeal timely.

[3] Unless otherwise noted, all legal citations in this Memorandum and Order omit any internal quotation marks, citations, brackets, ellipses, and footnotes.

ability to do basic work activities." *Id.* § 404.1522(a).  If the impairment is not severe, then the plaintiff is not disabled.[4]  *Id.* § 404.1520(a)(4)(ii).

If the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether the impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  *Id.* § 404.1520(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App'x 1.  If at step three the ALJ determines that the plaintiff has one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act.  *Id.* § 404.1520(a)(4)(iii).

If the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC")[5] before continuing to steps four and five.  To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting."  *Id.* § 404.1545(a)(1).  The ALJ is responsible for assessing the plaintiff's

---

[4] When a plaintiff asserts a mental health impairment, that impairment is severe when the Plaintiff has either one extreme or two marked limitations in a broad area of functioning, which include understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves.  20 C.F.R. Part 404, Subpart P, App'x 1, § 12.04(B).  An "extreme limitation" is defined as the inability to function independently, appropriately, or effectively, and on a sustained basis.  *Id.*  A "marked limitation" means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.  *Id.*

[5] "[A]n individual's RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (*per curiam*).  "[A] claimant is not disabled if her 'residual functional capacity and vocational abilities make it possible for her to do work which exists in the national economy, but she remains unemployed because of her inability to get work,' or because of 'the hiring practices of employers,' or because [Plaintiff] 'would not actually be hired to do work she could otherwise do.'"  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting 20 C.F.R. § 416.966(c)(1), (3), (7)).

RFC "based on all the relevant evidence in the case record." *Pellot v. Comm'r of Soc. Sec.*, No. 18-CV-3337 (AMD), 2019 WL 3500919, at *1 (E.D.N.Y. Jul. 31, 2019).

The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.* If the plaintiff cannot, or if no past relevant work exists, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 404.1520(a)(4)(v). If the answer is yes, the plaintiff is not disabled; otherwise, the plaintiff is disabled and is entitled to benefits. *Id.*

## B. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2012, for her DIB claim and since December 30, 2015, for her SSI claim. (Tr. 22.) At step two, the ALJ determined that Plaintiff had the following severe impairments: "depressive, bipolar, and related disorder, anxiety and obsessive-compulsive disorder, and substance addiction disorder, in remission," as well as "dysfunction of a major joint[6] and attention deficit hyperactivity disorder (ADHD), inattentive type."[7] (Tr. 22.) The ALJ noted that these impairments "significantly limit the ability to perform basic work activities." (Tr. 22.) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the impairments in the Listings. (Tr. 23.) The ALJ then determined at step four that "[Plaintiff] has

---

[6] The "major joint" referenced by the ALJ is Plaintiff's right hip and her left knee. (Tr. 27, 366.)

[7] While the ALJ's analysis applies to both Plaintiff's DIB and SSI claims, "dysfunction of a major joint and attention deficit hyperactivity disorder (ADHD), inattentive type," apply only to Plaintiff's SSI claim. (Tr. 22.)

4

the [RFC] to perform medium work as defined in 20 CFR [§§] 404.1567(c) and 416.967(c)." [8]  (Tr. 25.)

The ALJ noted one physical health limitation and two mental health limitations to Plaintiff's RFC.  (Tr. 25.)  First, the ALJ concluded that Plaintiff is unable to perform "frequent balancing, stooping, crouching, kneeling, crawling, [and] climbing ramps and stairs," but can engage in "occasional climbing ladders, ropes and scaffolds."  (Tr. 25.)  Second, the ALJ determined that Plaintiff's capacity to perform medium work is "limited to simple repetitive and routine tasks, but not at a production rate pace in a work setting with only occasional changes."  (Tr. 25.)  Third, the ALJ concluded that Plaintiff's ability to perform medium work is limited to "occasional interaction with supervisors, occasional superficial interaction with co-workers and rare interaction with the general public (rare meaning 1% to 5% of the work day)."  (Tr. 25.)  Given these findings, the ALJ determined that Plaintiff was unable to perform any of her past relevant work.  (Tr. 31.)  At step five, however, the ALJ determined that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], . . . there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  (Tr. 32.)  According to the vocational expert's testimony, "[Plaintiff] would be able to perform the requirements of" three representative occupations: "[v]ehicle [c]leaner," "[l]aborer of [s]tores," and "[l]aborer of [s]alvage."  (Tr. 32–33.)  Given this testimony, Plaintiff's "age, education, work experience, and [RFC]," the ALJ determined that "[Plaintiff] is capable of making a successful adjustment to other work that exists

---

[8] Under 20 C.F.R. § 404.1567(c), "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, [the ALJ must] determine that he or she can also do sedentary and light work."

in significant numbers in the national economy."  (Tr. 33.)  The ALJ concluded, therefore, that

Plaintiff was not disabled during the claimed period of disability.  (Tr. 33.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal

district court seeking judicial review of the Commissioner's denial of benefits.  42 U.S.C. § 405(g).

In reviewing a final decision of the Commissioner, the Court's role is "limited to determining

whether the SSA's conclusions were supported by substantial evidence in the record and were

based on a correct legal standard."  *Talavera*, 697 F.3d at 151; *see Valderrama v. Comm'r of Soc.

Sec.*, 379 F. Supp. 3d 141, 145 (E.D.N.Y. 2019) (quoting *Talavera*, 697 F.3d at 151).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).  To assess whether the ALJ's

findings "are supported by substantial evidence, the reviewing court is required to examine the

entire record, including contradictory evidence and evidence from which conflicting inferences

can be drawn."  *Johnson v. Comm'r of Soc. Sec.*, No. 15-CV-341 (SLT), 2017 WL 1166348, at *2

(E.D.N.Y. Mar. 28, 2017) (quoting *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999)).  Findings of

fact that are supported by substantial evidence are conclusive and must be upheld by the reviewing

court.  42 U.S.C. § 405(g).

## DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and fails

to apply the relevant legal standards.  (Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s

Mot."), Dkt. 12, at 10.)  For the reasons below, the Court grants Plaintiff's motion and remands to

the SSA because the ALJ (1) failed to adequately develop the record, and (2) provided an RFC

that was not supported by substantial evidence.  *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC),

2017 WL 4334127, at *13–27 (E.D.N.Y. Sept. 28, 2017) (remanding due to an insufficiently developed record and because the ALJ's RFC finding was not supported by substantial evidence).

## I.     The ALJ Failed to Adequately Develop the Administrative Record

### A.     Duty to Develop the Record

Before reaching the merits of a Social Security appeal, "[t]he reviewing court must first be satisfied that the [plaintiff] has had a full hearing under the regulations and in accordance with the beneficent purposes of the Social Security Act." *Staib v. Colvin*, 254 F. Supp. 3d 405, 408 (E.D.N.Y. 2017). "The ALJ's failure to develop the record is a threshold issue, because the Court cannot rule on whether the ALJ's decision regarding [the plaintiff's] functional capacity was supported by substantial evidence if the determination was based on an incomplete record." *Thomas v. Comm'r of Soc. Sec.*, No. 20-CV-5086 (PKC), 2022 WL 523544, at *4 (E.D.N.Y. Feb. 22, 2022).

"ALJs are required to 'develop the plaintiff's complete medical history for at least the 12 months preceding the month in which [she] filed [her] application,' and to 'make every reasonable effort' in assisting plaintiff in getting medical evidence." *Chapman v. Comm'r of Soc. Sec.*, No. 19-CV-1873 (PKC), 2020 WL 5763629, at *3 (E.D.N.Y. Sept. 27, 2020) (quoting 20 C.F.R. § 416.912(b)(1)). Further, "the ALJ has a duty to develop the record if there exist[] 'obvious gaps.'" *Thomas*, 2022 WL 523544, at *7 (quoting *Rusin v. Berryhill*, 726 Fed. App'x 837, 840–41 (2d Cir. 2018)). "[I]nconsistencies or vague opinions can also create a duty to further develop the record." *Id.* at *7–8 (remanding because of the ALJ's failure to resolve ambiguities and fully develop the record after finding a treating physician's opinion "vague"). An "ALJ's duty to develop the record is further enhanced when the disability in question is a psychiatric impairment." *Horowitz v. Comm'r of Soc. Sec.*, No. 20-CV-2351 (PKC), 2021 WL 4147271, at *9 (E.D.N.Y.

Sept. 13, 2021); *see also Jackson v. Colvin*, No. 13-CV-5655 (AJN) (SN), 2014 WL 4695080, at

\*16 (S.D.N.Y. Sept. 3, 2014) (adopting report and recommendation) ("[C]laims concerning mental

disorders require a robust examination that is sensitive to the dynamism of mental illnesses and

the coping mechanisms that claimants develop to manage them.").

"[E]ven [when the claimant] did not raise the issue, the Court must independently consider

whether the ALJ failed to satisfy his duty to develop the record." *Lebby v. Comm'r of Soc. Sec.*,

No. 20-CV-4760 (PKC), 2022 WL 580983, at \*4 (E.D.N.Y. Feb. 24, 2022).  This duty exists even

if the plaintiff is represented by counsel.  *See Merriman v. Comm'r of Soc. Sec.*, No. 14-CV-3510

(PGG) (HBP), 2015 WL 5472934, at \*18 (S.D.N.Y. Sept. 17, 2015).  And the ALJ must fulfil this

duty "even where . . . Plaintiff's attorney can be said to have informed the ALJ that it was

unnecessary to request the missing records." *Benjamin v. Colvin*, No. 16-CV-1730 (LDH), 2017

WL 4402445, at \*8 (E.D.N.Y. Sept. 30, 2017); *see also Corona v. Berryhill*, No. 15-CV-7117

(MKB), 2017 WL 1133341, at \*16 (E.D.N.Y. Mar. 24, 2017) ("The ALJ's discussion on the record

with Plaintiff's counsel regarding [a physician's] treatment notes and her decision to leave the

record open for thirty days for the submission of his records were not sufficient to satisfy her duty

because the ALJ took no further action to ensure that the record was complete . . . .").  The "ALJ's

failure to adequately develop the record is grounds for remand." *Chapman*, 2020 WL 5763629, at

\*3.

### B.     The ALJ Failed to Develop the Record Despite Obvious Gaps

The ALJ did not obtain or consider medical records for a substantial portion of the period

Plaintiff received medical treatment and claimed a disability.   Although Plaintiff's treating

psychiatrist, Dr. Bor-Shiuan Chuang, saw Plaintiff for two years and four months at New Horizon

Counseling Center ("New Horizon"), starting with her first visit on April 25, 2016, Dr. Chuang

8

indicated in his treatment notes that Plaintiff had been receiving treatment from other sources for much longer.  (Tr. 351–52, 384–86, 396–400.)  For example, Plaintiff told Dr. Chuang at her first visit that she was taking psychotropic medications, suggesting she had already been receiving mental health treatment.  (Tr. 30, 351, 385.)  And Dr. Chuang's notes on Plaintiff's mental health treatment history reflect that Plaintiff "came to [the Federation Employment & Guidance Service[9]] about 6 years ago with features of depression and difficulty controlling her anger."  (Tr. 351, 385.)  Then, the Federation Employment & Guidance Service "was transitioned to [the Jewish Board of Family and Children's Services[10]] in June 2015 which ended in Jan 2016" (Tr. 351, 385), where Plaintiff continued treatment for her "depression and anger issue" (Tr. 352, 386).  Further, one of Plaintiff's therapists at New Horizon—Denisse Torres,[11] L.M.S.W.—indicated in her treatment records from Plaintiff's first visit on March 19, 2016, that she had been referred to New Horizon by the Jewish Board of Family and Children's Services "because of program closure," and that Plaintiff had received treatment at other institutions "for 5 years."  (Tr. 340–43, 374–76.)[12]

The consultative psychologist's and non-examining psychologist's records also show that Plaintiff had a history of mental health treatment prior to 2016.  In her examination notes from December 21, 2016, consultative psychologist Dr. Kathleen Acer observed that Plaintiff "is being

---

[9] The record references "FEGS," which the Court assumes, based on other information in the record, is a reference to the Federation Employment & Guidance Service.

[10] The record references "Jewish Board," which the Court assumes is a reference to the Jewish Board of Family and Children's Services, based on other information in the record.

[11] The ALJ refers to Denisse Torres as "Ms. Jones," which is likely due to an erroneous reading of Ms. Torres's handwriting.

[12] While conceivably outside of the required time period for the ALJ's duty to develop the record, a careful review of the entire Administrative Transcript reveals that in the "Claimant's Recent Medical Treatment" form dated January 10, 2019, Plaintiff reported that prior to Dr. Chuang, she had seen a "Dr. Pecoraro" in 2011 "for months." (Tr. 320–21.)

seen presently at New Horizon[] for the past seven years, once a month by the psychiatrist, and once a week by the therapist." (Tr. 358.) And non-examining psychologist Dr. "K Gawley"[13] referenced Plaintiff's history of mental health treatment from before New Horizon, which Dr. Gawley gleaned from Plaintiff's treatment notes. (Tr. 126, 130.)

Plaintiff also testified that she had been receiving mental health treatment "for nine years, . . . maybe more than that," or at least since "2012" from her psychiatrist. (Tr. 100.) And, as noted, Plaintiff claimed a disability beginning January 1, 2012. (Tr. 19, 100.)

Given the many indications in the record that Plaintiff received consistent mental health treatment for at least four years prior to 2016, the ALJ had a duty to fill the "obvious gaps." *Thomas*, 2022 WL 523544, at *7 (quoting *Rusin*, 726 Fed. App'x at 840–41). Because Plaintiff filed her application on December 30, 2015 (Tr. 19), the ALJ had an obligation to develop Plaintiff's "complete medical history [from] at least" December 30, 2014. *Chapman*, 2020 WL 5763629, at *3. Despite the evidence of Plaintiff's previous mental health treatment, however, the ALJ did not consider any medical records from before 2016. Nor is there any indication that the ALJ attempted to obtain these records. The ALJ's failure to attempt to obtain such records "alone warrants remand."[14] *Thomas*, 2022 WL 523544, at *7 (citing *Rosa v. Callahan*, 168 F.3d 72, 83

---

[13] Although the ALJ refers to a "Dr. Fawley," the Commissioner informs the Court that this is "a simple typographical error." (Defendant's Cross-Motion for Judgment on the Pleadings ("Def.'s Mem."), Dkt. 16-1, at 15 n.4.)

[14] Although Plaintiff does not raise her physical impairments on appeal, the Court notes similar gaps in Plaintiff's physical health treatment records. In determining that "[t]he objective medical evidence of record shows no problems with ambulation or fine and gross movements," the ALJ relied solely on the opinion of Dr. Fidel Rodriguez, a consultative physician, and on one note from Dr. Acer, the previously referenced consultative psychologist, that Plaintiff had reported no medical issues during a mental health consultative visit. (Tr. 23, 360, 364–68.) There are no records from any treating physicians for Plaintiff's primary physical care. The record indicates, however, that Plaintiff has been seeing a primary care physician regularly. Dr. Rodriguez reported that Plaintiff has been seeing Dr. Christine O'Donoghue Kitt for her primary care needs. (Tr. 365.)

(2d Cir. 1999)) (remanding because the ALJ failed to obtain "adequate information from [plaintiff's] treating physician"); *see also Wilson v. Colvin*, 107 F. Supp. 3d 387, 404–08 (S.D.N.Y. 2015) (remanding in light of the ALJ's failure to fill an obvious gap in the record).

### C.   The ALJ Failed to Develop the Record to Reconcile Inconsistencies

The ALJ also failed to develop the record to reconcile purported inconsistencies between Dr. Chuang's opinion and other evidence.  Dr. Chuang opined that Plaintiff would have "moderate to marked" limitations with respect to "working in coordination with others without being distracted," and "moderate to marked limitations in social interactions."  (Tr. 30.)  "As to those functions in which Dr. Chuang opine[d] there is a moderate to marked limitation," however, the ALJ "accept[ed] [only] moderate limitations."  (Tr. 30.)  The ALJ also rejected Dr. Chuang's opinion that Plaintiff would be absent from work more than three days per month.  (Tr. 30.)  The ALJ concluded that these portions of Dr. Chuang's opinion conflicted with Plaintiff's "mental status examinations throughout the record" and with Dr. Chuang's treatment notes.  (Tr. 30.)  The

---

Dr. Chuang's treatment notes from April 25, 2016, list Dr. Kitt as Plaintiff's primary care provider. (Tr. 351, 353.)  Plaintiff's "Disability Report," a form in which Plaintiff listed her medical history relevant to her applications for SSI and DIB, indicates that Dr. Kitt treated Plaintiff, and that her last visit was March 22, 2017.  (Tr. 301.)  Further, although Plaintiff's heart concerns were not a part of her initial disability application, the Disability Report indicates that Plaintiff had been seeing a cardiologist since 2016, and had an upcoming appointment scheduled for April 3, 2017. (Tr. 302.)  The ALJ's failure to seek the opinions of Plaintiff's treating physicians as to these physical conditions was also error.  *See Downes v. Colvin*, No. 14-CV-7147 (JLC), 2015 WL 4481088, at *15 (S.D.N.Y. July 22, 2015) ("Although the Second Circuit has held that it is not *per se* error for an ALJ to make a disability determination without having sought the opinion of the claimant's treating physician, a decision not to remand assumes that there are no obvious gaps in the record precluding the ALJ from properly assessing the claimant's residual functional capacity.").

ALJ also concluded that "Dr. Chuang failed to explain his answers, and it [was] therefore not possible to assess the basis of the responses."[15]  (Tr. 30.)

To the extent the ALJ perceived "internal inconsistencies in [Dr. Chuang's] opinion, [the ALJ] was obliged to recontact [Dr. Chuang] and attempt to resolve them."  *Romero v. Colvin*, No. 11-CV-3920 (ENV), 2016 WL 74820, at *4 (E.D.N.Y. Jan. 6, 2016); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings [supporting the treating physician's opinion] were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*."); *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y.1998) ("[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly.").  On remand, the "ALJ must support [his] determination with positive evidence," and may not discount Dr. Chuang's opinion as unexplained and unsupported based on "evidentiary gaps or negative inferences."  *Linton v. Comm'r of Soc. Sec.*, No. 18-CV-0632 (FB), 2019 WL 5551436, at *3 (E.D.N.Y. Oct. 28, 2019).

## II.    The ALJ Failed to Support the RFC With Substantial Evidence

Plaintiff argues that the Commissioner's decision was not supported by substantial evidence and that the ALJ failed to apply the applicable legal standards.  (Pl.'s Mot., Dkt. 12, at 11.)  As noted, "substantial evidence" is "such relevant evidence as a reasonable mind might accept

---

[15] Plaintiff points out that even "moderate" limitations mean that Plaintiff could be missing up to one-third of an eight-hour workday, and "moderate-to-marked" limitations mean that Plaintiff could be missing one-third to two-thirds of an eight-hour workday.  (Pl.'s Mot., Dkt. 12, at 11; *see also* Tr. 399, 406.)  Plaintiff argues that even after reducing "moderate-to-marked" limitations to "moderate" limitations, the ALJ should have concluded that Plaintiff would have been absent enough to make employment untenable.  (Pl.'s Mot., Dkt. 12, at 12–13; *see also* Tr. 114.)  The Vocational Expert also testified that an attendance pattern where Plaintiff would be absent more than two days per month "would not allow for successful work."  (Tr. 115.)

as adequate to support a conclusion." *Selian*, 708 F.3d at 417.  Plaintiff contends that the ALJ

erred in weighing the medical evidence of Plaintiff's treating psychiatrist, Dr. Chuang, and

improperly substituted his own medical conclusions for those of Dr. Chuang.  (*Id.* at 10–20.)

Finally, Plaintiff argues that the ALJ incorrectly weighed Plaintiff's self-reported activities.  (*Id.*

at 19–22.)  Although the ALJ's failure to develop the record is sufficient for remand, the Court

further concludes that the ALJ's mental RFC finding is not supported by substantial evidence.

### A.      The ALJ Failed to Properly Weigh Opinion Evidence

#### 1.      The Treating Physician Rule[16]

"Social Security Administration regulations, as well as [Second Circuit] precedent,

mandate specific procedures that an ALJ must follow in determining the appropriate weight to

assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  "First,

the ALJ must decide whether the opinion is entitled to controlling weight." *Id.*  "The opinion of a

claimant's treating physician . . . is given controlling weight so long as it is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is [consistent] with the

other substantial evidence in the case record." *Id.*; *see also* 20 C.F.R. § 404.1527(c)(2).

"Second, if the ALJ decides the opinion is not entitled to controlling weight, it must

determine how much weight, if any, to give it." *Estrella*, 925 F.3d at 95.  "In doing so, it must

explicitly consider" (1) "the frequency, length, nature, and extent of treatment;" (2) "the amount

of medical evidence supporting the opinion;" (3) "the consistency of the opinion with the

remaining medical evidence;" and (4) "whether the physician is a specialist." *Id.* at 95–96; *see*

---

[16]    Although recent regulatory amendments have eliminated the "treating physician rule,"
it still applies to claims filed with the SSA before March 27, 2017.  *See* 20 C.F.R. §§ 404.1527,
404.1520c; *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-
01, 2017 WL 168819, at *5844, *5867–68 (Jan. 18, 2017).

*also* 20 C.F.R. § 404.1527(c)(2).  "An ALJ's failure to 'explicitly' apply the [four] factors when assigning weight at step two is a procedural error." *Estrella*, 925 F.3d at 96.  In such cases, a court must remand unless the ALJ has "provided good reasons for its weight assignment," or unless "a searching review of the record assures [the court] that the substance of the treating physician rule was not traversed." *Id*.  Thus, "[a]t both steps, the ALJ must give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion." *Id*.; *see also* 20 C.F.R. § 404.1527(c)(2).  Courts "do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (*per curiam*).

In contrast to their review of opinions from treating physicians, "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian*, 708 F.3d at 419.  And "[w]here . . . there are conflicting opinions between the treating and consulting sources, the 'consulting physician's opinions or report should be given limited weight.'" *Sanders v. Comm'r of Soc. Sec*., 506 F. App'x 74, 78 n.4 (2d Cir. 2012) (summary order) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)).  Similarly, "[t]he medical opinion of a non-examining medical expert does not constitute substantial evidence and may not be accorded significant weight." *Roman v. Astrue*, No. 10-CV-3085 (SLT), 2012 WL 4566128, at *16 (E.D.N.Y. Sept. 28, 2012).  "This concern is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella*, 925 F.3d at 98.  Likewise, the "treating physician rule is even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time." *Rankov v. Astrue*, No. 11-CV-2534 (CBA), 2013 WL 1334085, at *9 (E.D.N.Y. Mar. 30, 2013).

2.    The ALJ Failed to Provide Good Reasons for Discounting Dr. Chuang's Opinion

Although the ALJ purported to give substantial weight to the opinion of Plaintiff's treating psychiatrist, Dr. Chuang, the ALJ declined to give Dr. Chuang's opinion controlling weight and failed to provide good reasons for discounting Dr. Chuang's opinion.  Dr. Chuang opined that Plaintiff suffers from bipolar I disorder with most recent episode depressed mood and ADHD, inattentive type.  (Tr. 394, 396.)  He observed that Plaintiff experiences depressed mood, anhedonia/pervasive loss of interests, hostility or irritability, decreased energy, easy distractibility, and excessive sleep, where the most frequent and/or severe symptoms are "mood instability, anxiety, irritability, depression, [and] low motivation."  (Tr. 397–98.)  He also observed that Plaintiff's "past challenges with mood instability creat[ed] workplace conflict and challenges with peer relationships."  (Tr. 398.)  According to Dr. Chuang, these conditions moderately to markedly limit Plaintiff's ability to "work in coordination with or near others without being distracted by them," "interact appropriately with the public," "accept instructions and respond appropriately to criticism from supervisors," "get along with coworkers or peers without distracting them," and "maintain socially appropriate behavior.  (Tr. 399.)  Finally, Dr. Chuang opined that Plaintiff's limitations would cause her to be absent from work "two to three times per month."  (Tr. 400.)

As discussed, although the ALJ purported to give Dr. Chuang's opinion "significant weight," the ALJ discounted Dr. Chuang's opinion that Plaintiff had "moderate to marked" limitations, instead selectively accepting only the "moderate" limitations portion of Dr. Chuang's assessment.  (Tr. 30.)  Because the ALJ did not in fact give Dr. Chuang's opinion controlling weight (Tr. 30), he was required to "explicitly consider" (1) "the frequency, length, nature, and extent of treatment;" (2) "the amount of medical evidence supporting the opinion;" (3) "the

15

consistency of the opinion with the remaining medical evidence;" and (4) "whether the physician is a specialist," *Estrella*, 925 F.3d at 95–96.  The ALJ, however, failed to do so.

Although, the ALJ mentioned that Dr. Chuang had been treating Plaintiff at New Horizon for "2 years and 4 months," during which time Plaintiff received "monthly medication management and weekly individual therapy," and that Dr. Chuang was "a specialist" (Tr. 29), "merely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment.'"  *Ferraro v. Saul*, 806 F. App'x 13, 15 (2d Cir. 2020) (summary order).  And a "vague reference [to a treating physician's specialization] does not show sufficient consideration of [the treating physician's] status as a specialist in weighing his opinion*.*"  *Horowitz*, 2021 WL 4147271, at *6 (collecting cases). "Because the ALJ procedurally erred, the question becomes whether a searching review of the record assures the Court that the substance of the treating physician rule was not traversed."  *Id.* at *7.  The Court concludes that the record does not and that the ALJ traversed the substance of the treating physician rule.

As previously discussed, the ALJ deemed Dr. Chuang's opinion as to Plaintiff's "moderate to marked" limitations inconsistent with the doctor's own notes, and with Plaintiff's "mental status examinations throughout the record."  (Tr. 30.)  Specifically, the ALJ referenced Dr. Chuang's April 2016 psychiatric evaluation where Dr. Chuang had found that Plaintiff's "psychotropic medications (Prozac and Buspar) [had] stabilized her so that she [had] not been angry and [was] less depressed," and that Plaintiff  "was moderately depressed, but she has been well dressed and cooperative, alert, attentive, oriented in all spheres, with appropriate affect and thought content, average intelligence, intact memory, adequate concentration and judgment and insight."  (Tr. 30.) Further, the ALJ noted that Dr. Chuang had found "no significant changes" between the Plaintiff's

April 2016 and February 2018 psychological evaluations. (Tr. 30.) But the ALJ did not explain how such observations were inconsistent with Plaintiff's continued moderate depression, difficulty controlling her anger, and mood swings. (Tr. 351, 354–55, 385–93.) Nor did he explain how these observations were inconsistent with Plaintiff's anhedonia/pervasive loss of interests, hostility or irritability, decreased energy, easy distractibility, and excessive sleep, or more generally, Dr. Chuang's opinion that Plaintiff suffered from marked limitations in her ability to socially interact or work with others. (Tr. 387, 397–98.) And, in any event, "[s]uch an assessment is beyond the scope of the ALJ's authority, since 'neither the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion.'" *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 121 (2d Cir. 2018) (summary order) (quoting *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)) (concluding that the ALJ, who "expended significant energy recounting the treating physician's notes," lacked authority to say that those "notes indicated nothing more than 'mild anxiety'" simply because they reflected that the plaintiff "arriv[ed] at appointments well-groomed and with a calm affect").

The Commissioner counters that the ALJ's refusal to accept both Dr. Chuang's opinion as to Plaintiff's "moderate to marked" limitations and Dr. Chuang's assessment that Plaintiff would miss two or three days of work each month was proper because an ALJ is not required to rely on an opinion that is "vague and broad." (Memorandum of Law in Support of the Defendant's Cross-Motion ("Def.'s Mem."), Dkt. 16-1, at 16.) The Commissioner cites a summary order from the Second Circuit where the court found that the ALJ's reliance on the opinion of a consultative physician was improper because the opinion was "vague and broad." *Aung Winn v. Colvin*, 541 F. App'x 67, 69 (2d Cir. 2013) (summary order). The Commissioner also cites *Pilaccio v. Commissioner of the Social Security Administration*, No. 16-CV-1251 (ADS), 2017 WL 2789023,

at *5 (E.D.N.Y. Jun. 26, 2017), where the court found that the ALJ's decision to afford no weight to the consultative physician's opinion was proper because she had seen the plaintiff only once and her opinion "was so conclusory and vague as to render it useless in evaluating the Plaintiff's residual functional capacity."   As discussed above, however, to the extent that the ALJ found Dr. Chuang's opinion "vague and broad," the ALJ had an affirmative duty to develop the record, including "request[ing] more information from [Dr. Chuang] to reconcile any internal inconsistency." *Horowitz*, 2021 WL 4147271, at *8 (collecting cases); *see also Lee v. Saul*, No. 19-CV-9451 (CS) (JCM), 2020 WL 5362619, at *14 (S.D.N.Y. Sept. 8, 2020) ("Although [the treating physician's] assessments setting forth [the plaintiff's] functioning levels were brief, and arguably vague, the appropriate solution was not to reject the opinions contained therein on that basis, but rather to recontact [the treating physician] in an effort to have him clarify any ambiguities.").   Thus, the ALJ failed to apply the treating physician rule to Dr. Chuang's opinion and, based on the record, traversed the substance of the rule.[17]

---

[17] The ALJ also gave the opinion of Jillian Viup, L.C.S.W., Plaintiff's treating therapist, "partial weight," and entirely discounted the opinion of another therapist who saw Plaintiff at New Horizon, Chivaun Carter, L.M.S.W.  (Tr. 29–31.)  According to Ms. Viup, Plaintiff has "moderate to marked" limitations with "getting along with supervisors and co-workers," and she would miss work two to three times a month.  (Tr. 29.)  As with Dr. Chuang's opinion, the ALJ reduced Ms. Viup's finding of "moderate to marked" limitations to "moderate" limitations, and entirely rejected Ms. Viup's opinion regarding Plaintiff's frequent absences from work as unexplained and unsupported.  (Tr. 29.)  Ms. Carter similarly opined that Plaintiff had "moderate to marked" limitations in her ability to "[i]nteract appropriately with the public," "[a]ccept instructions and respond appropriately to criticism from supervisors," "[g]et along with coworkers or peers without distracting them," "[m]aintain socially appropriate behavior," "[r]espond appropriately to workplace changes," and "[b]e aware of hazards and take appropriate precautions."  (Tr. 372.)  The ALJ also entirely discounted Ms. Carter's findings because she was not an acceptable medical source and did not explain her response.  (Tr. 30–31.)

While the ALJ did not have to afford Ms. Viup's and Ms. Carter's opinions any weight under SSR 06-03P, therapists such as Ms. Viup and Ms. Carter "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  SSR 06-03P (S.S.A. Aug. 9, 2006), at *2.  Here, Ms. Viup's and Ms. Carter's opinions "cannot establish the

3.     The ALJ Improperly Weighed Non-Treating Sources' Opinions

The ALJ also gave undue weight to the opinions of non-treating sources.  In addition to the

opinion of Dr. Chuang and Plaintiff's treating therapists, the ALJ considered the opinions of Dr.

Acer, a consultative psychologist, and Dr. Gawley, a non-examining psychologist.[18]  (Tr. 29–31.)

The ALJ gave "significant weight" to Dr. Acer's opinion that Plaintiff "may have some

moderate limitations" or no limitations (Tr. 360), on the ground that it was consistent with the

medical evidence and other opinion evidence (Tr. 31).  The ALJ also gave "significant weight" to

Dr. Gawley's opinion that Plaintiff would be able to perform unskilled work.  (Tr. 29.)   But Dr.

Acer saw Plaintiff only once, and the ALJ ignored discrepancies between Dr. Acer's opinion and

those of Plaintiff's treating psychiatrist and therapist.  Similarly, Dr. Gawley's opinion was based

only on Plaintiff's first visit with Dr. Chuang, her first visit to New Horizon with Ms. Torres, and

Dr. Acer's notes.  (Tr. 138, 142.)  As noted, both Dr. Chuang and Ms. Carter opined that Plaintiff

had "moderate to marked" limitations in her social interactions.  (Tr. 372, 399.)  Contrary to the

---

existence of a medically determinable impairment," but their opinions provide further insight into
Plaintiff's mental impairments diagnosed by Dr. Chuang.  *Id.*; *see also Patel obo Patel v. Comm'r
of Soc. Sec.*, No. 20-CV-0237 (FB), 2021 WL 4356030, at *2 (E.D.N.Y. Sept. 24, 2021) ("The
ALJ should have given 'controlling weight' to [treating physician's]–and in practical effect to
[treating physician assistant's]–medical opinions regarding [the plaintiff's] ongoing condition and
symptoms" because they both treated her concurrently at the same office as part of her care team);
*Lopez v. Barnhart*, No. 05-CV-10635 (JSR), 2008 WL 1859563, at *15 (S.D.N.Y. Apr. 23, 2008)
("[Social worker's] observations would be relevant on the issue of the intensity and persistence of
[the] plaintiff's symptoms, which in turn affect [the] plaintiff's capacity for work and hence the
ultimate disability determination.").  In any event, the ALJ had a duty to recontact therapists Ms.
Viup and Ms. Carter for further development of the record rather than discounting their opinions
based on the lack of supporting evidence.  *See Gardner v. Colvin*, No. 16-CV-2385 (JFB), 2019
WL 3753797, at *17 (E.D.N.Y. Aug. 8, 2019) (remanding because the ALJ failed to recontact the
plaintiff's therapist and instead based her decision to discount the therapist's opinion on the lack
of psychotherapy notes).

[18] Although the ALJ had access to Ms. Torres's treatment notes for Plaintiff's March 19,
2016 visit, the ALJ does not appear to have considered Ms. Torres's opinion at all in Plaintiff's
RFC determination.

ALJ's characterization, these opinions are inconsistent with, and may even contradict, Dr. Acer's and Dr. Gawley's assessments of "moderate" or "no" limitations.  (Tr. 30–31, 138, 142, 360.)  The ALJ's characterizations thus reflect impermissible "cherry-pick[ing] [of] evidence from the record that only support[s] his findings."  *Brett P. v. Comm'r of Soc. Sec.*, No. 18-CV-01395 (NAM), 2020 WL 95720, at *10 (N.D.N.Y. Jan. 8, 2020); *see also Gough v. Saul*, 799 F. App'x 12, 14 (2d Cir. 2020) (summary order) ("We fear that the ALJ cherry-picked evidence from the record to support his conclusion that [the plaintiff] could work full time even though the record as a whole suggested greater dysfunction.").

### B.      Plaintiff's Self-Reported Limitations and Activities

#### 1.      Legal Standard

While an ALJ is "not 'required to credit a plaintiff's testimony about the severity of her pain and the functional limitations it causes,'" *Jenkins v. Comm'r of Soc. Sec.*, No. 19-CV-3192 (PKC), 2020 WL 5709387, at *9 (E.D.N.Y. Sept. 23, 2020) (quoting *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008)), the ALJ must determine whether the plaintiff's statements as to her limitations are consistent with the treatment record, *see Correale-Englehart,* 687 F. Supp. 2d 396, 435 (S.D.N.Y. 2010) ("The issue is . . . whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her pain are consistent with the objective medical and other evidence.").  Evidence of a plaintiff's daily functions "does not, in itself, contradict a claim of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves."  *Soto v. Comm'r of Soc. Sec.*, No. 20-CV-2077 (PKC), 2021 WL 4033781, at *14 (E.D.N.Y. Sept. 2, 2021).

#### 2.      The ALJ Improperly Weighed Plaintiff's Self-Reported Limitations

At the hearing on June 10, 2019, Plaintiff testified in detail about the impacts that her mental impairments have on her daily life, and about her bipolar disorder worsening as she aged.

(Tr. 97, 107.)  She explained that she cannot drive due to her anxiety (Tr. 107), has difficulty concentrating due to her ADHD (Tr. 104), and "get[s] very depressed" and "very anxious," such that "[s]ome mornings . . . [she's] crying and can't get out of bed," and her "mind starts racing" (Tr. 97).  According to Plaintiff, she cannot leave her bed and spends the day "miserable" "[a]t least two or three times a week."  (Tr. 102.)  Plaintiff also testified that she has had problems controlling her anger with her family and previously with her coworkers.  (Tr. 97–98.)  For example, she described an instance where she "started yelling at [a coworker] and screaming at [the coworker]," and where she "had thoughts of pushing [another coworker] down the stairs" who had laughed at her.  (Tr. 98.)  Plaintiff also recounted how the Saturday before the hearing she "wanted to hurt" her sister and was screaming so loudly in the house at her sister that the sister threatened to call the police.  (Tr. 99.)  She also testified that her medications "help, but not all the time," such that there are "high highs and low lows."  (Tr. 109.)  Finally, Plaintiff testified that her depression and difficulty controlling her anger keep her from working.  (Tr. 97.)

Despite Plaintiff's testimony, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 26.)  The ALJ relied on Plaintiff's reports from her first visit with Ms. Torres at New Horizon, more than three years before the hearing.  (Tr. 26, 374–83.)  The ALJ determined that Plaintiff's "reason for seeking mental health treatment was in connection with the birth of [her] granddaughter," and she reported that "she got along well with co-workers." (Tr. 26.)  According to the ALJ, "[i]t is significant that [Plaintiff] described herself as friendly, and was maintaining various hobbies like drawing, painting and reading books," because "[t]hese factors indicate that the claimant was able to work, despite a history of mental health issues."  (Tr. 26.)  The ALJ also found "significant that, per her testimony,

21

[Plaintiff] was able to obtain her high school diploma at 55 in early 2014, which shows an ability to focus and concentrate and also requires a degree of social interaction."  (Tr. 28.)

The ALJ's choice "to disregard [Plaintiff's] statements in favor of a handful of anecdotes that would seem to indicate Plaintiff's normal functionality" was improper.[19]  *Scognamiglio v. Saul,* 432 F. Supp. 3d 239, 252 (E.D.N.Y 2020) (citing *Lim v. Colvin*, 243 F. Supp. 3d 307, 317 n.7 (E.D.N.Y. 2017) (remanding for the ALJ to explicitly consider "stated limitations" with respect to plaintiff's "subjective complaints of pain")).  "[A] claimant need not be an invalid to be found disabled under the Social Security Act."  *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998); *see also Murdaugh v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 837 F.2d 99, 102 (2d Cir. 1988) (holding that a claimant was disabled because he could not perform sedentary work, even though he "water[ed] his landlady's garden, occasionally visit[ed] friends and [was] able to get on and off an examination table"); *Scognamiglio*, 432 F.Supp.3d at 252 (remanding because being able to drive, go for short walks, prepare simple meals, go outside, shop in stores, and go to church did not preclude a finding of disability).  Plaintiff's attempts to improve her mental health and wellbeing by spending time with her granddaughter, drawing, painting, and reading books, and her description of herself as "friendly" at one therapy visit, do not undermine her testimony that her

---

[19] The Commissioner points to a "Function Report" from November 4, 2016—two-and-a-half years before the ALJ hearing—in which "Plaintiff admitted that she helped provide care for her granddaughter, who was then five years old; prepared meals each day; cleaned her own living space and did laundry; handled her own personal care independently, without reminders; drove a car; shopped in stores; and had no trouble remembering things, or following written or spoken instructions." (Def.'s Mem, Dkt. 16-1, at 12.)  In that report, however, Plaintiff also explained that she suffers from panic attacks; her medications cause her to "sleep [more] than [she] should"; she "sometimes gets depressed [and] too sad to get out of bed most [of] the day"; she "can not [sic] work so much due to illness and get[s] chest pains"; she cannot finish what she starts; she gets "overwhelmed" and "upset" from stress; and she has problems getting along with bosses and coworkers.  (Tr. 279–88.)

bipolar disorder, depression, anxiety, and anger issues severely limit her ability to leave the house and keep her from working.[20]

## CONCLUSION

For the reasons above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.  The Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order.  The Clerk of Court is respectfully directed to enter judgment and close this case.


                              SO ORDERED.

                              */s/ Pamela K. Chen*
                              Pamela K. Chen
                              United States District Judge

Dated: March 31, 2022
          Brooklyn, New York


---

[20] Because the Court reverses and remands on these grounds, the Court need not address Plaintiff's argument that the Appeals Council improperly declined to accept the opinion of Dr. Pavlos Kymissis, a psychiatrist whom Plaintiff saw for the first time after the ALJ's decision.  On remand, however, the ALJ should consider Dr. Kymissis's opinion.